IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RONALD G. BAILEY-EL,

    Plaintiff,

      v.

THE HOUSING AUTHORITY OF
BALTIMORE CITY, *et al.*,

    Defendants.

                                        Civil Action No. RDB-15-2063

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Ronald G. Bailey-El ("Plaintiff" or "Bailey-El"), *pro se*, *in forma pauperis*, has

brought this action against Defendants Housing Authority of Baltimore City ("HABC"); Ms.

Green, Regional Director of the HABC; Kimberly Graham, former HABC Director of

Human Resources; Carla Walton, current HABC Director of Human Resources; Odyssey

Johnson, HABC Manager[1]; AFSCME[2] Local 647; and Anthony Coates, President of

AFSCME Local 647[3], alleging retaliation and violations of Plaintiff's First Amendment rights

(Count One); violations of Plaintiff's "fifth amendment due process rights" (Count Two);

and violations of any additional constitutional rights, including "procedural and substantive

---

[1] Plaintiff brings this action against the named Defendants "in these Defendants' official as well as their individual capacities." First Am. Compl., p. 27, ECF No. 16.

[2] Although Plaintiff names "AFSME" Local 647 as a Defendant, "AFSCME" is the proper abbreviation for the American Federation of State, County and Municipal Employees.

[3] This Court's records indicate that Defendants Ms. Green, Kimberly Graham, Carla Walton, Odyssey Johnson, AFSCME Local 647, and Anthony Coates have not been served with a summons or copy of the operative complaint in this action. Nevertheless, this action will be dismissed in its entirety and with respect to all Defendants, as explained *infra*, for failure to state a claim for relief.

due process rights" (Count Three).  First Am. Compl., p. 1, ECF No. 16[4].  As explained *infra*, this Court construes all of Plaintiff's claims as arising under 42 U.S.C. § 1983, alleging violations of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution and First Amendment retaliation.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*Pro se* pleadings are afforded a liberal construction).  Currently pending before this Court are Plaintiff's Motion to Appoint Counsel (ECF No. 6); Defendant HABC's Motion to Dismiss the First Amended Complaint (ECF No. 8)[5]; Plaintiff's Motion for Extension of Time and to Correct Administrative Errors (ECF No. 10); Plaintiff's Motion for Clerk's Entry of Default (ECF No. 12); and Plaintiff's Motion for Default Judgment (ECF No. 14).  The parties' submissions have been reviewed, and no hearing is necessary.  *See* Local Rule 105.6.  For the reasons stated herein, Plaintiff's Motion to Appoint Counsel (ECF No. 6) is DENIED and Defendant HABC's Motion to Dismiss the First Amended Complaint (ECF No. 8) is GRANTED. Additionally, Plaintiff's Motion for Extension of Time and to Correct Administrative Errors (ECF No. 10) is GRANTED; Plaintiff's Motion for Clerk's Entry of Default (ECF No. 12) is DENIED; and Plaintiff's Motion for Default Judgment (ECF No. 14) is also DENIED.  Accordingly, the First Amended Complaint is DISMISSED.

---

[4] Without leave of Court, Plaintiff filed a First Amended Complaint on October 21, 2015 (ECF No. 16). Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to file an amended complaint "shall be freely given when justice so requires." A trial judge has discretion to grant or deny leave to amend a complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Rule 15(a)'s liberal standard is even more broadly construed for *pro se* litigants. *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978) (holding that *pro se* civil rights litigants should be permitted to amend their complaints even if their motion for leave to amend does not state how the amendment cures deficiencies in an earlier pleading); *see generally Haines v. Kerner*, 404 U.S. 519 (1972) (holding that pleadings by *pro se* litigants should be held to a less stringent standard than litigants represented by counsel).  Therefore, this Court accepts the First Amended Complaint as the operative Complaint in this case.
[5] Defendant's pending Motion requests dismissal of the Complaint.  As stated *supra*, Plaintiff has since filed a First Amended Complaint, which this Court accepts as the operative Complaint in this case.  In its Reply brief in support of its underlying Motion, Defendant argues for dismissal of the First Amended Complaint on the same grounds raised in the underlying motion.  Accordingly, the pending Motion to Dismiss will be construed as a Motion to Dismiss the First Amended Complaint, the operative Complaint in this case.

BACKGROUND

This Court accepts as true the facts alleged in the First Amended Complaint.[6]  *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).  Additionally, because the Plaintiff is proceeding *pro se*, this Court has accorded his pleadings liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Plaintiff Ronald G. Bailey-El ("Plaintiff" or "Bailey-El") "united with[7] the Housing Authority of Baltimore City [("HABC")] as a maintenance worker II in 2007."  First Am. Compl., p. 6, ECF No. 16.  Bailey-El's first two years with HABC were "swell."  *Id.* at 7.  He indicates that "there was plenty of overtime" and describes himself as "nothing less than a hard worker trying to advance."  *Id.*  However, "in 2009 or 2010," Bailey-El became involved in a "verbal altercation" with Defendant Odyssey Johnson's ("Defendant" or "Johnson")[8] administrative assistant, who proceeded to hit him with a mop, causing him to sprain his ankle.  *Id.* at 7-8.  Subsequently, Bailey-El "took to the grievance procedure[9] for recourse."  *Id.* at 7.  Bailey-El's "write-up" "inflamed, infuriated and incited to anger" Ms. Sharon Larue ("Larue") and Defendants Johnson, Ms. Green ("Defendant" or "Green"), and Kimberly Graham ("Defendant" or "Graham")[10], all of whom were friends with the administrative assistant.  *Id.* at 8.  Thereafter, Bailey-El contends, these Defendants "were out to . . . terminate [his] employment in retaliation for filing grievances."  *Id.* at 8-9.

---

[6] As explained *supra*, the First Amended Complaint is the operative complaint in this case.

[7] Bailey-El provides no further description of his relationship with HABC.  It is not clear whether he was a contractor or an employee.  On page 7 of the First Amended Complaint, he casually references his "employment," but fails to articulate the terms of his employment.

[8] On page 1 of the First Amended Complaint, Bailey-El indicates that Johnson was a Manager at HABC.

[9] Bailey-El provides no further description of HABC's grievance procedures or the specific steps he took and fails to indicate what, if any, disciplinary action was taken against the administrative assistant.

[10] On page 1 of the First Amended Complaint, Bailey-El indicates that Green was a Regional Director at HABC and that Graham was Director of Human Services.

Later "[i]n 2009 or 2010," "Larue informed [Bailey-El] that he had more than 2 points on his license (drivers) and if those points weren't removed within 11 days then [he] would be terminated." *Id.* at 9.   Unable to comply with Larue's request[11], Bailey-El was terminated.  *Id.* at 10.   He claims that he was the only HABC employee terminated for this reason and that "the entire maintenance community was shocked" and could not identify "where in [their] contracts or Housing Policy . . . it sa[id] one [could] be terminated for the reason the Defendants terminated [Bailey-El]." *Id.*  Accordingly, Bailey-El filed a grievance against the aforementioned Defendants, with the assistance of Defendant Anthony Coates ("Defendant" or "Coates"), President of Local Chapter 647 of the American Federation of State, County and Municipal Employees ("AFSCME")[12].  *Id.* at 1, 10.   While awaiting a grievance hearing before Graham, Bailey-El "defeated the Defendants in the arena of unemployment payments, as it was determined that [he] was terminated due to no fault of [his] own." *Id.* at 11.   Subsequently, he "prevailed at the hearing and was reinstated and awarded back pay."[13]  *Id.*

Although Bailey-El was reinstated, he "was assigned to do the jobs in maintenance that no other maintenance worker would do." *Id.* at 12.   He alleges that "[t]he assignments were given [to him] in 2012 in retaliation for filing grievances and being known to [his] coworkers for filing grievances." *Id.*  "On or about June 23, 2012," while completing one of

---

[11] Bailey-El avers that "removing 2 points from one's license is an impossible feat to execute within 11 days." *Id.*

[12] Although Bailey-El does not specifically state so, he is presumably a member of this union, which is also named as a Defendant.

[13] Bailey-El concedes that the aforementioned events "are not actionable here as they have been long ago adjudicated." *Id.*  He relays them to "make the Court aware of the established practice of retaliation for filing grievances which the Defendants [Johnson, Green, Graham, and HABC] have been and, until this day, [continue to] practic[e] upon [him]." *Id.* at 12.

those assignments, Bailey-El suffered a serious injury.  *Id.* at 13-14.  He was transporting trash from the Chase House Building in Baltimore City to the City's dump when the back gates of the vehicle he was driving swung open and damaged several vehicles.[14]  *Id.*  Although the timeline of events is unclear, Bailey-El claims that he "immediately went and found [Johnson] and informed her of what had transpired."  *Id.* at 14.  "Moreover, [he] was seriously injured in this accident . . . [and] was in excruciating pain and about to faint after the initial shock had worn off."  *Id.*  An ambulance arrived, and Bailey-El was transported to Maryland General Hospital "where [he] was diagnosed with multiple injuries."  *Id.* at 14-15.  Bailey-El was only given three days off work, but saw "[his] lawyer's[15] doctor for follow-up purposes and was given an additional two [] weeks off."  *Id.* at 15.

Bailey-El claims that Defendants Johnson, Green, Graham, and HABC were furious with him for not going to "Concentra," a medical care system with whom HABC had entered into a multi-million dollar contract.  *Id.* at 15-16.  When Bailey-El returned to work on July 12, 2012, he "was sent to the Human Resources office, where it was explained to [him] that [he] should have gone to Concentra before going to the hospital."  *Id.* at 17.  Bailey-El objects that going to Concentra first would have been "impossible and ridiculous" because he "was in dire need of immediate care."  *Id.* at 16-17.  Sometime thereafter, Graham terminated Bailey-El "for a host of bogus reasons other than the accident incident and the Concentra matter."  *Id.* at 17.  When Bailey-El filed a grievance, Defendants became further inflamed.  *Id.*  His grievance was denied at a hearing conducted by Graham, and his

---

[14] Bailey-El claims that the back gates "were in need of dire repair."  *Id.* at 14.
[15] Bailey-El has filed the present action *pro se.*  He makes no other mention of a lawyer.  It is not clear whether or not he was represented by counsel at an earlier time and, if so, by whom.

"termination was to be final." *Id.* at 18.

Bailey-El, with the assistance of Defendants Coates and AFSCME Local 647, proceeded to appeal "the grievance procedure's findings and sought the next tier in the grievance process, which was arbitration." *Id.* However, the "grievance procedure and the union contract" failed to designate a "time as to when the arbitration hearing would be heard, *i.e.*, the [D]efendants were to choose a date with Coates."[16] *Id.* Therefore, realizing that his "three year statute of limitations to bring suit against the Defendants would expire on or about July 16, 2012[17], [Bailey-El] went to the Defendant Ms. Carla Walton's [("Defendant") or ("Walton")][18] office on July 1, 2015 and delivered [to] her a date-stamped-copy of [his] sister's address, [his own] address, and a reliable friend's address as to where [he] could receive mail." *Id.* at 19. Bailey-El claims that he "placed Ms. Walton on notice to respond to this date-stamped letter or [he] would be forced to go to Court concerning the deliberate[] robbery and nonconduction of [his] arbitration hearing."[19] *Id.* at 20. Coates informed Bailey-El that he had been denied an arbitration hearing "several months ago because the Defendants could not find [him]." *Id.*

Because Bailey-El "defeated the Defendants in the unemployment forum, where [Bailey-El] was found not at fault for his firing or termination, the Defendants knew [Bailey-El] would successively be victorious at [his] arbitration hearing." *Id.* at 23. Therefore,

---

[16] Bailey-El avers that the grievance procedure and union contract were unconscionable and that Coates "was working to change this matter." *Id.* at 18-19.

[17] Bailey-El seems to have made a typographical mistake. He was not terminated until July of 2012. Therefore, the three year statute of limitations would not expire until 2015.

[18] Bailey-El indicates that Graham no longer worked for HABC at this time and that Walton had assumed her position as Director. *Id.* at 20.

[19] Bailey-El claims that "[t]his act occurred on or about July 1, 2012." *Id.* at 20. However, via correspondence filed on October 26, 2015 (ECF No. 17), Bailey-El indicates that this "date should read July 1, 2015 and not July 1, 2012."

Bailey-El contends, all of the named Defendants "conspired to deprive [him], in totality, of [his] arbitration hearing by claiming they couldn't find [him]." *Id.* Even Coates betrayed "his union brother[] . . . to stay in good standing with the named Defendants." *Id.* at 24.

Plaintiff has brought the present action because of the "harm and injuries" he has suffered "due to the Defendants['] actions over such a long period of time and culminating on July 12, 2012." *Id.* On July 10, 2012[20], "[b]efore the expiration of [his] three year statute of limitations," Bailey-El claims that he mailed the initial Complaint in this action to the Clerk of this Court. *Id.* at 21. Subsequently, he filed a First Amended Complaint (ECF No. 16), the operative complaint in this case. Bailey-El alleges that "Defendants deliberately and intentionally violated [his] 1st Amendment Constitutional Rights" and "retaliated against [him] for filing grievances by terminating [his] employment and denying [him] any and all arbitration proceedings and protections" (Count One). *Id.* at 25-26. Additionally, he alleges that "Defendants deliberately and intentionally violated [his] Constitutional Fifth Amendment due process rights" (Count Two). *Id.* at 26. Finally, he claims that "Defendants . . . violated any and all [of his] Constitutional rights . . . not mentioned here . . . [including] procedural and substantive due process rights" (Count Three). *Id.*

"[Bailey-El] seeks, from each [HABC employee] involved in this civil action, the sum of $25,000 per each Defendant for a total of $125,000." *Id.* at 27. "[He] seeks this sum in these Defendants' official as well as their individual capacities." *Id.* "[Bailey-El] seeks an additional $100,000 from the Defendant AFS[C]ME and Local 647" for Coates' "conspiring with the Defendants" and "delivery of ineffective assistance of counsel." *Id.* at 28. Finally,

---

[20] Bailey-El seems to have made another typographical error. The initial Complaint in this case (ECF No. 1) was actually mailed and filed in July of 2015.

Bailey-El seeks an additional $100,000 from HABC.  *Id.*  "In the alternative, [Bailey-El] demands that this case be remanded back to arbitration where [he] will receive three years back-pay in the amount of $84,240."  *Id.* at 29.  "Moreover, [he] demands that at same said hearing [he] be re-instated within [HABC].  Moreover, [he] demands that [HABC] pay [him] a matching $84,240 due to the deliberate and intentional actions of its employees."  *Id.*

## STANDARD OF REVIEW

### I.   Motion to Appoint Counsel Pursuant to 28 U.S.C. § 1915(e)(1)

A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one and may be considered where an indigent claimant presents exceptional circumstances.  *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982).  The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant.  *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. District Court*, 490 U.S. 296, 298 (1989). Where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed.  *Id.*

### II.   Motions for Clerk's Entry of Default and for Default Judgment Pursuant to Rules 55(a)–(b) of the Federal Rules of Civil Procedure

Rule 55 of the Federal Rules of Civil Procedure governs entry of default and motions for default judgment.  Fed. R. Civ. P. 55 (2015).  Rule 55(a) addresses motions for a clerk's entry of default and provides that "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Under Rule 55(b)(1), "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the

clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing . . ." Fed. R. Civ. P. 55(b)(1).  "In all other cases, the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).  The United States Court of Appeals for the Fourth Circuit has articulated a "strong policy that cases be decided on the merits." *Wilson v. Turner*, No. ELH-13-3497, 2014 WL 4426126, at *1 (D. Md. Sept. 2, 2014) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)).  However, a default judgment may be appropriate where the "adversary process has been halted because of an essentially unresponsive party."  *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

III.    Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required."  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).  In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to

9

dismiss. *Iqbal*, 556 U.S. at 678.  First, while a court must accept as true the factual allegations contained in the complaint, the court is not so constrained when the factual allegations are conclusory or devoid of any reference to actual events.  *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).   Moreover, a court need not accept any asserted legal conclusions drawn from the proffered facts.   *Iqbal*, 556 U.S. at 678. (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim).  In the context of *pro se* litigants, however, pleadings are "to be liberally construed," and are "held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted); *accord Brown v. N.C. Dept. of Corr.*, 612 F.3d 720, 724 (4th Cir. 2010).

Second, even a *pro se* complaint must be dismissed if it does not allege "a plausible claim for relief."  *Iqbal*, 556 U.S. at 679; *see also O'Neil v. Ponzi*, 394 Fed.Appx. 795, 796 (2d Cir. 2010).  Although a "plaintiff need not plead the evidentiary standard for proving" her claim, she may no longer rely on the mere possibility that she could later establish her claim.  *McCleary-Evans v. Maryland Department of Transportation, State Highway Administration*, 780 F.3d 582, 584 (4th Cir. 2015) (emphasis omitted) (discussing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) in light of *Twombly* and *Iqbal*).

<u>ANALYSIS</u>

I.   <u>Plaintiff's Motion to Appoint Counsel (ECF No. 6) is DENIED</u>

Plaintiff has filed a "Request for Counsel" (ECF No. 6), "pursuant to this Court's local rules regarding 'request for counsel' as a *pro se* litigant proceeding via *forma paupreris*." Mot. to Appoint Counsel, p. 1, ECF No. 6.  The power to appoint counsel under 28 U.S.C.

§ 1915(e)(1) is a discretionary one, and this Court must determine whether Plaintiff presents exceptional circumstances warranting the appointment of counsel. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982).

In this case, Plaintiff raises a series of claims against Defendants for alleged constitutional violations, including violations of his "1st Amendment Constitutional Rights" (Count One), "Fifth Amendment due process rights" (Count Two), and "any and all Constitutional rights . . . as the Court may construe . . . [including] procedural and substantive due process rights" (Count Three), all in connection with his termination from the Housing Authority of Baltimore City ("HABC") in "retaliat[ion] . . . for filing grievances." First Am. Compl., p. 25-26, ECF No. 16. Affording the First Amended Complaint a liberal construction, *see Erickson,* 551 U.S. at 94, this Court construes Plaintiff's claims as alleging violations of his rights under the First Amendment to the United States Constitution[21], violations of his substantive and procedural due process rights under the

---

[21] Plaintiff makes no indication that he intends to raise either Maryland tort law claims or claims for violations of the Constitution of the State of Maryland. Accordingly, this Court construes his constitutional claims as arising under the United States Constitution. Even if Plaintiff were to raise Maryland state constitutional or tort law claims, his claims against HABC and its employees would be barred by Maryland's Local Government Tort Claims Act ("LGTCA"). The statute provides, in relevant part, that: "[a]n action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." MD. CODE ANN., CTS. & JUD. PROC. § 5–304(b)(1). Maryland state constitutional claims, in addition to tort claims, are subject to the provisions of the LGTCA. *See Crystal v. Batts*, No. JKB-14-3989, 2015 WL 5698534, at *8 (D. Md. Sept. 25, 2015). Here, Defendant HABC objects that Plaintiff did not provide notice of this suit. The First Amended Complaint does not allege that Plaintiff provided HABC notice, nor does Plaintiff dispute HABC's contention that he failed to provide notice.

Fourteenth Amendment[22] to the United States Constitution, and First Amendment retaliation, all pursuant to 42 U.S.C. § 1983.

Upon careful consideration of the pending motions and previous filings by Plaintiff, this Court finds that Plaintiff has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. The issues pending before this Court are not unduly complicated, and no hearing is necessary to the disposition of this case. In conclusion, there are no exceptional circumstances that would warrant the appointment of an attorney to represent Plaintiff under Section 1915(e)(1). Furthermore, in support of his request for counsel, Plaintiff specifically indicated that he "may need counsel" in order to, among other things, "amend his complaint." However, as noted *supra*, Plaintiff has now amended his Complaint without the assistance of counsel. For these reasons, Plaintiff's Motion to Appoint Counsel (ECF No. 6) is DENIED.

II.   <u>Plaintiff's Motion for Clerk's Entry of Default (ECF No. 12) and Motion for Default Judgment (ECF No. 14) are both DENIED</u>.

Plaintiff has filed a "Motion for Entrance of Default by the Clerk of the Court" (ECF No. 12), pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, in which he requests that "this Court 'Enter Default' against the Defendants [in] this civil action." Mot. for Clerk's Entry of Default, p. 1-2, ECF No. 12. He contends that "since the filing of [his] Complaint, the Defendants have failed to plead or otherwise defend in this matter . . . [and

---

[22] Although Plaintiff alleges violations of his "Fifth Amendment due process rights," he has not named the United States or any agent or entity of the United States as a Defendant. The Due Process Clause of the Fifth Amendment to the United States Constitution *prohibits the United States* from depriving any person of property without "due process of law," while the Fourteenth Amendment Due Process Clause applies to state and local governments. *See, e.g., Dusenbery v. United States*, 534 U.S. 161, 167 (2002). As Plaintiff alleges due process violations by a Baltimore City agency and employees of that agency, his claims are properly brought under the Fourteenth Amendment.

that] the 21-day time limit for the Defendants to plead or otherwise defend in this matter has expired long ago." *Id.* at 2-3.  Plaintiff suspects that the Defendants are "ignor[ing]" his filings, as is their "common practice." *Id.* at 3.  Although he acknowledges receipt of a notice (ECF No. 9) from the Clerk of this Court that Defendant Housing Authority of Baltimore City ("HABC") has in fact filed a Motion to Dismiss or for Summary Judgment (ECF No. 8), Plaintiff maintains that he has not received a copy of that motion and that it is a non-existent "Ghost Motion." *Id.* at p. 4, 7.

Subsequently, Plaintiff has filed a separate "Motion for Default Judgment" (ECF No. 14), pursuant to Rule 55(b)(1) of the Federal Rules of Civil Procedure, "seeking the entrance of default judgment against all Defendants in this civil action." Mot. for Default J., p. 1-2, ECF No. 14.  Plaintiff requests that this Court enter Judgment in his favor for the full amount of damages requested in the First Amended Complaint, plus costs. *Id.* at 2-6.

A. <u>Defendant Housing Authority of Baltimore City Has Filed a Timely Responsive Pleading in this Action</u>

Defendant HABC filed a Motion to Dismiss (ECF No. 8) in this Court on September 18, 2015.  The Clerk of this Court mailed Plaintiff a notice that same day (ECF No. 9), indicating that HABC had filed a Motion to Dismiss and explaining to Plaintiff that he had a right to respond.  HABC's Motion was a timely pleading in response to the Complaint because HABC was not served until August 26, 2015.

HABC submitted a copy of its motion to Plaintiff via mail, but it was returned as undelivered.  Def.'s Consent to Pl.'s Request for Extension of Time to File, ECF No. 11. Subsequently, HABC re-mailed the motion using a different zip code, and that mailing was not returned. *Id.*  HABC admits that the first address was incorrect, but attributes its

mistake to "an inability to read Plaintiff's handwritten address" in an earlier "Change of Addres" notice (ECF No. 7) filed in this Court. *See* Opp'n to Pl.'s Mot. for Default at ¶ 4, ECF No. 13. Defendant has since indicated that he has received all filings in this case. *See* Correspondence, p. 1, ECF No. 19.

In light of Plaintiff's delayed receipt of the pending Motion to Dismiss, he has filed a Motion for Extension of Time to File a Response (ECF No. 10), to which Defendant HABC has consented (ECF No. 11). Plaintiff's Motion for Extension of Time (ECF No. 10) is GRANTED. Accordingly, this Court has considered all of Plaintiff's subsequent filings in ruling on the pending motions. However, in light of the fact that Defendant HABC did file a timely pleading in response to the Complaint and has continued to defend itself against Plaintiff's claims since that time, neither default nor a default judgment will be entered against Defendant HABC in this action.

B.  The Remaining Defendants Have Not Been Properly Served

HABC objects that Defendants Ms. Green, Kimberly Graham, Carla Walton, Odyssey Johnson, Anthony Coates, and AFSME Local 647 have not been properly served in this action. *See* Opp'n to Pl.'s Mot. for Default at ¶ 2, ECF No. 13. Plaintiff, *pro se*, claims that "[t]he United States Marshal, pursuant to Fed. R. Civ. P. (4)(c)(3), has indeed exercised its duty in serving the Defendants with service and process regarding Plaintiff's initially filed complaint." Pl.'s Reply, p. 3, ECF No. 20. However, these Defendants have not responded to the allegations against them, nor have legal counsel entered appearances on their behalf.

The administrative records of this Court indicate that summonses and copies of the Complaint were delivered to the addresses of the named Defendants provided by the

Plaintiff.  On August 28, 2015, the United States Marshals Service ("USMS") submitted to this Court executed "green cards" and signed 285 forms for each of the named Defendants, indicating that service of process had been executed (ECF No. 5)[23].  However, on September 1, 2015, USMS returned to the Clerk of this Court the envelopes, containing the original summonses and service copies of the Complaint, that were thought to have been served on the Defendants.  *See* Staff Notes, Sept. 1, 2015.  The envelopes were marked "Return to Sender, Unable to Forward."  *Id.*

For reasons unknown to this Court, it appears that the Defendants in this action, with the exception of HABC, were not properly served.  Plaintiff has failed to demonstrate otherwise.  "[P]roper service is a pre-requisite for an entry of default, and entry of default is a pre-requisite for a default judgment . . ."  *Hodges v. Washington Metro. Area Transit Auth.*, No. CBD-14-0891, 2014 WL 5797754, at *3 (D. Md. Nov. 5, 2014).  Therefore, neither default nor a default judgment will be entered against the Defendants who have not yet responded to the Complaint.  Accordingly, Plaintiff's Motion for Clerk's Entry of Default (ECF No. 12) is DENIED, and Plaintiff's Motion for Default Judgment (ECF No. 14) is also DENIED[24].

---

[23] When a United States District Court permits a plaintiff to file *in forma pauperis*, the court must direct the United States Marshals Service to effectuate service of process.  *See Danik v. Hous. Auth. of Baltimore City*, 396 F. App'x 15, 16 (4th Cir. 2010) (citing 28 U.S.C. § 1915(d) (2006); Fed.R.Civ.P. 4(c)(3)).

[24] Ordinarily, this Court would enter a Show Cause Order, pursuant to Local Rule 103.8 (D. Md. 2014), directing the Plaintiff to show cause why the Defendants who have yet to be properly served should not be dismissed from this action.  However, for the reasons stated *infra*, the First Amended Complaint is dismissed in its entirety, with respect to all claims against all Defendants.  Therefore, effecting service of process on the remaining Defendants would be futile.

III.    Defendant Housing Authority of Baltimore City's Motion to Dismiss the First Amended Complaint (ECF No. 8) is GRANTED.

A.    All of Plaintiff's Claims are Barred by the Statute of Limitations

Defendant Housing Authority of Baltimore City has moved to dismiss the First Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Mot. to Dismiss, p. 1, ECF No. 8. HABC first argues that all of Plaintiff's claims are barred by the statute of limitations. Mem. Supp. Mot. to Dismiss, p. 5, ECF No. 8-1. A defendant may raise the statute of limitations as a bar to the plaintiff's claims as an affirmative defense. *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005). The defendant bears the burden of establishing a statute of limitations defense. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). As a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "tests the sufficiency of the complaint," that motion "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Id.* To properly raise a statute of limitations defense in a motion to dismiss, the complaint must include allegations supporting this time bar. *Id.* In other words, a district court will reach a statute of limitations defense if the "time bar is apparent on the face of the complaint." *Dean*, 395 F.3d at 474 (citing *Bethel v. Jendoco Construction Corp.*, 570 F.2d 1168 (3d Cir. 1978).

Although 42 U.S.C. § 1983 does not specify a limitations period, this Court looks to Maryland law for the appropriate statute of limitations. *Grattan v. Burnett*, 710 F.2d 160, 162 (4th Cir. 1983). This Court, applying Maryland law, accordingly applies the three-year statute of limitations for civil actions, MD. CODE ANN., CTS. & JUD. PROC. § 5-101; *Weathersbee v. Baltimore City Fire Dep't*, 970 F. Supp. 2d 418, 429-30 (D. Md. 2013). In contrast, the time of

16

accrual of a civil rights action is a question of federal law. *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975); *Gough v. Calvert Cty. Det. Ctr.*, No. DKC-15-3095, 2016 WL 1586135, at *2 (D. Md. Apr. 20, 2016). Federal law holds that the time of accrual is when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Cox*, 529 F.2d at 50 (citing *Young v. Clinchfield R.R. Co.*, 288 F.2d 499, 503 (4th Cir. 1961)).

Defendant HABC argues that all of Plaintiff's claims are barred by Maryland's three-year statute of limitations. Mem. Supp. Mot. to Dismiss, p. 5, ECF No. 8-1. HABC contends that the First Amended Complaint "only makes more clear that [Plaintiff] is challenging the events leading up to and including his termination, which are all events that occurred three years before he filed his Complaint, namely events before July 14, 2012." Reply Supp. Mot. to Dismiss, p. 1, ECF No. 18. Plaintiff misstates several dates in the First Amended Complaint, one of which he subsequently corrected. *See* Correspondence, ECF No. 17. Other events are loosely tied together without dates or are identified as having occurred "on or about" a certain date. However, Plaintiff does unequivocally state that he "returned to work," following his injury, on "July 12, 2012" and that he "was sent to the Human Resources office . . . [and] terminated." First Am. Compl. at p. 17. Additionally, on page 24 of the First Amended Complaint, Plaintiff states that he brings this action as a result of "Defendants['] actions" and his "harm and injuries" "over such a long period of time and *culminating on July 12, 2012*." *Id.* at 24. Plaintiff's own allegations indicate that he knew or had reason to know of the injury on which his action is based by July 12, 2012. Therefore, his cause of action accrued on that date, and the three-year statute of limitations expired on July 12, 2015, two days before Plaintiff filed the Complaint in this action.

In the First Amended Complaint, Plaintiff expresses his understanding that his "three-year statute of limitations to bring suit against the Defendants would expire on or about July 16, 2012." First Am. Compl., p. 19, ECF No. 16. However, he offers no factual allegations to support this miscalculation. A plaintiff's own miscalculation or misunderstanding of the statute of limitations's operation does not entitle him to equitable tolling. *See, e.g., United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (*pro se* petitioner's misconceptions about the operation of the statute of limitations do not justify equitable tolling because they are not extraordinary circumstances beyond his control). Additionally, Plaintiff makes the case that his Complaint was timely filed because it was "mailed" on July 10, 2015, and his "Complaint is deemed filed when mailed." However, Plaintiff incorrectly states the law. A complaint must be "filed" before Maryland's three-year statute of limitations runs. *See* MD. CODE ANN., CTS. & JUD. PROC. § 5-101 ("A civil action at law shall be *filed* within three years from the date it accrues . . . ."). Plaintiff may be referencing the "mailbox rule," available to *pro se* prisoner litigants seeking habeus relief in this Court. *See, e.g., Collins v. Bishop*, No. PWG-13-3435, 2014 WL 1388284, at *2 (D. Md. Apr. 8, 2014) ("Under the 'prison mailbox rule,' 'a petition is deemed filed upon delivery to prison mailroom officials.' "). However, the mailbox rule does not apply to his *pro se* civil complaint. Finally, he alleges that his "initial Complaint is timely" because he "is given three additional days for mailing." First Am. Compl., p. 21, ECF No. 16. Petitioner again misinterprets the law. Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time *after service* and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire

under Rule 6(a)." Fed. R. Civ. P. 6(d). However, Rule 6(d) applies to filings *after service*, not to a civil complaint filed after the statute of limitations has run.

Plaintiff has failed to offer any compelling reason to justify tolling the statute of limitations. *See English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987) (equitable tolling applies "where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action."); *Hecht v. Resolution Trust Corp.*, 635 A.2d 394, 399 (1994) (holding that Maryland does not allow implied or equitable exceptions to the statute of limitations, absent legislative exception). Although Plaintiff generally alleges that he was denied an administrative appeal of his termination, which "would have [] put [him] on notice concerning [his] appeal rights," pursuing an administrative remedy does not affect the limitations period for filing other claims. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462–67 (1975) (state statutes of limitation are not tolled while plaintiff is pursuing a Title VII administrative claim); *Trent v. Bolger*, 837 F.2d 657, 659 (4th Cir. 1988) ("[T]olling [of state statutes of limitation] does not apply in situations where a plaintiff pursues relief through parallel administrative proceedings"). Accordingly, the First Amended Complaint is DISMISSED as untimely. However, even if Plaintiff's initial Complaint were timely filed, the operative complaint would still be dismissed for failure to plead a claim for relief under 42 U.S.C. § 1983.

B.   Plaintiff Fails to State a First Amendment or First Amendment Retaliation Claim

The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people to peacefully assemble." U.S. Const. amend. I. In analyzing a First Amendment free speech

claim, this Court must make three inquiries. This Court must first ascertain whether the plaintiff has engaged in protected speech. *See Goulart v. Meadows*, 345 F.3d 239, 246 (4th Cir. 2003). If the speech is protected, this Court must next determine the nature of the forum because the extent of protection afforded by the First Amendment depends on the type of forum in which the government seeks to restrict speech. *Id.* Finally, this Court "must assess whether the justifications for exclusion from the relevant forum satisfy the requisite [level of scrutiny]." *Id.* A plaintiff seeking to recover on a First Amendment *retaliation* claim specifically must establish that "(1) she engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected her First Amendment rights, and (3) there was a causal relationship between her protected activity and the defendants' conduct." *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (citation omitted).

Here, this Court's inquiry stops at the first element of a First Amendment claim because Plaintiff has failed to allege that he engaged in protected speech. He alleges only that he raised a complaint about a fellow employee who had assaulted him, that his superiors were angered by his action, and that they subsequently fired him for violating HABC's healthcare policies, which he seems to argue was a pre-textual reason. "When a public employee sues a government employer under the First Amendment's Speech Clause, the employee must show that he or she spoke as a citizen on a matter of public concern." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 386 (2011). "The public concern test was developed to protect . . . substantial government interests" in the management of its "internal affairs." *Guarnieri*, 564 U.S. at 393. "If an employee does not speak as a citizen, or

does not address a matter of public concern, 'a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.' " *Id.* at 386 (quoting *Connick v. Myers*, 461 U.S. 138, 147 (1983)). "If an employee does not speak as a citizen on a matter of public concern, then 'the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.' " *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 346-47 (D. Md. 2011) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 410 (2006)). Here, any and all of Plaintiff's potential First Amendment claims arise our of HABC's reaction to internal grievances he has filed, especially one claim he raised against an administrative assistant who was friendly with Plaintiff's superiors. Plaintiff has failed to articulate how his speech addressed a matter of public concern. "Whether the speech relates to a matter of public concern turns on 'the content, form, and context . . . as revealed by the whole record.' " *Id.* (quoting *Connick*, 461 U.S. at 147–48 & n. 7). The United States Supreme Court held in *Guarnieri* that a petition made via "an internal grievance procedure," which does "not seek to communicate to the public or to advance a political or social point of view beyond the employment context," does not constitute a matter of public concern. *Guarnieri*, 564 U.S. at 398. Therefore, Plaintiff cannot state a First Amendment claim. Accordingly, all of Plaintiff's claims alleging First Amendment violations or First Amendment retaliation, with respect to all Defendants, are DISMISSED.

      C.    <u>Plaintiff Fails to State a Claim for Substantive or Procedural Due Process Violations</u>

" 'The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of *liberty* and *property*.' "

*Luy v. Baltimore Police Dep't*, 326 F. Supp. 2d 682, 689 (D. Md. 2004), *aff'd*, 120 F. App'x 465 (4th Cir. 2005) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972)) (emphasis added). Likewise, "[a] violation of 'substantive' due process occurs only where the government's actions in depriving a person of *life, liberty, or property* are so unjust that no amount of fair procedure can rectify them." *Love v. Pepersack*, 47 F.3d 120, 123 (4th Cir. 1995) (emphasis added). "A public employee who is discharged without a hearing is not denied Fourteenth Amendment due process unless he is thereby deprived of a legitimate 'liberty' or 'property' interest." *Prince v. Bridges*, 537 F.2d 1269, 1270-71 (4th Cir. 1976) (quoting *Board of Regents v. Roth*, 408 U.S. 564 (1972)).  A state or local government employee has a protected property interest in continued public employment only if he or she can show a "legitimate claim of entitlement" to his or her job under state or local law.  *See Luy*, 326 F. Supp. 2d at 689 (quoting *Roth*, 408 U.S. at 577-78).  "A public employee in an at-will position cannot establish such an entitlement, and thus cannot claim any Fourteenth Amendment due process protection." *Id.* at 689-90; *Pittman v. Wilson County*, 839 F.2d 225, 229 (4th Cir. 1988). "As a general rule, state and local employees are considered at-will under Maryland law." *Id.*; *see also Demesme v. Montgomery County Gov't*, 63 F. Supp. 2d 678, 682 (D. Md. 1999).  Here, Plaintiff has failed to allege that he was a tenured employee or otherwise outside the at-will employment relationship.  In fact, as noted *supra*, he fails to allege any details about the terms of his employment.

A public employee's termination may implicate a Fourteenth Amendment "liberty" interest where his "good name, reputation, honor, or integrity is at stake." *Luy*, 326 F. Supp. 2d at 690 (quoting *Roth*, 408 U.S. at 573).  To state a claim for deprivation of a liberty

interest, the plaintiff must "allege facts tending to show that his superiors made charges against him that might seriously damage his standing and associations in his community or otherwise imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities; that those charges were made public by his employer; and that the charges were false." *Id.* (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 n. 5 (4th Cir. 1988)). "Charges made by a plaintiff's state employer 'must at least imply the existence of serious character defects such as dishonesty or immorality' in order to implicate a protected liberty interest under the Fourteenth Amendment." *Id.* (quoting *Zepp v. Rehrmann*, 79 F.3d 381, 388 (4th Cir.1996)). Here, Plaintiff has failed to demonstrate that his termination, or the charges raised against him by HABC in relation to his termination "might seriously damage his standing and associations" or otherwise impose a "stigma" impacting his future employment. He alleges only that his termination for failure to comply with HABC's healthcare policies, was a pretext. He does not indicate that he has had trouble obtaining employment because of his termination or even that the reasons for his termination were made public. *See Luy*, 326 F. Supp. 2d at 691 (finding no deprivation of liberty interest where Plaintiff failed to allege that charges raised against him by employer were "made public by his employer."). Therefore, Plaintiff fails to state a procedural or substantive due process claim. Accordingly, all of Plaintiff's claims alleging substantive or procedural due process violations are DISMISSED.

In Count Three, Plaintiff alleged violations of "any and all Constitutional rights . . . as the Court may construe." First Am. Compl., p. 26, ECF No. 16. There being no further basis for any additional constitutional claims, Defendant Housing Authority of Baltimore

City's Motion to Dismiss the First Amended Complaint (ECF No. 8) is GRANTED. Accordingly, Plaintiff's First Amended Complaint is DISMISSED in its entirety, with respect to all claims against all named Defendants.

CONCLUSION

For the reasons stated above, Plaintiff's Motion to Appoint Counsel (ECF No. 6) is DENIED, and Defendant Housing Authority of Baltimore City's Motion to Dismiss the First Amended Complaint (ECF No. 8) is GRANTED.  Additionally, Plaintiff's Motion for Extension of Time and to Correct Administrative Errors (ECF No. 10) is GRANTED; Plaintiff's Motion for Clerk's Entry of Default (ECF No. 12) is DENIED; and Plaintiff's Motion for Default Judgment (ECF No. 14) is also DENIED.  Accordingly, the First Amended Complaint is DISMISSED.

A separate Order follows.

Dated: May 9, 2016                                    _____/s/_____
                                                                  Richard D. Bennett
                                                                  United States District Judge